**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID JACKSON,**

                                        **Plaintiff,**

          **vs.**                                        **1:24-cv-00203**
                                                          **(MAD/ML)**

**COUNTY OF ULSTER, DEPUTY SHERIFF**
**JUSSON RIVERA, sued in his individual**
**capacity, COLLIN REYNOLDS, sued in his**
**individual capacity, JORDAN FEIN, sued in**
**his individual capacity,**

                              **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**WATKINS LAW**                              **CHRISTOPHER D. WATKINS, ESQ.**
5 Paradies Lane
New Paltz, New York 12561
Attorneys for Plaintiff

**ELLIE SILVERMAN LAW P.C.**                  **ELLIE SILVERMAN, ESQ.**
745 5th Avenue - Suite 500
New York, New York 10151
Attorneys for Plaintiff

**BERGSTEIN & ULLRICH, LLP**                  **STEPHEN BERGSTEIN, ESQ.**
5 Paradies Lane
New Paltz, New York 12561
Attorneys for Plaintiff

**SOKOLOFF STERN LLP**                        **KIMBERLY H. LEE, ESQ.**
63 Washington Street
PO Box 509
Poughkeepsie, New York 12602-0509
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

1

## I. INTRODUCTION

This action was commenced on February 9, 2024, following Defendants' removal of the case from state court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.  *See* Dkt. No. 1.  On November 28, 2023, Plaintiff David Jackson filed a complaint in Ulster County Supreme Court of the State of New York.  *See* Dkt. No. 1-1.  Generally, Plaintiff alleges that Defendants County of Ulster, and Deputy Sheriffs, Jusson Rivera, Collin Reynolds and Jordan Fein violated his constitutional rights during a traffic stop and in legal proceedings thereafter.  *See generally* Dkt. Nos. 2, 20.

On July 11, 2024, Plaintiff filed an amended complaint.  *See* Dkt. No. 20.  Defendants filed a motion to dismiss the amended complaint on August 1, 2024.  *See* Dkt. No. 25.  Plaintiff filed an opposition to the motion to dismiss on August 21, 2024, and Defendants filed a reply in support on August 29, 2024.  *See* Dkt. Nos. 26, 27.  For the reasons that follow, the motion to dismiss is denied.

## II. BACKGROUND[1]

On August 30, 2022, Plaintiff was the passenger in a vehicle that was stopped by Defendant Rivera for a minor traffic infraction.  *See* Dkt. No. 20 at ¶ 9.  Defendant Rivera aggressively questioned Plaintiff and, without legal basis to do so, requested Plaintiff's identification.  *See id.* at ¶ 11.  Plaintiff complied and provided his driver's license.  *See id.* Defendant Rivera accused Plaintiff of acting "'fidgety'" and ordered the driver to exit the vehicle.  *Id.* at ¶¶ 12-13.  Plaintiff, on his own accord, exited the vehicle and began to walk away.  *Id.* at ¶

---

[1]  The recitation of facts herein is drawn from the allegations in the amended complaint, which are presumed true at this juncture.

14. At this time, Plaintiff was not detained or under arrest and Defendant Rivera had not directed Plaintiff to remain in the vehicle. *See id.* at ¶ 15.

Defendant Rivera lacked a basis to reasonably suspect Plaintiff had committed any crime, and, without provocation or justification, Defendant Rivera began to chase Plaintiff. *See id.* at ¶¶ 16-17. Defendant Rivera deployed his taser on Plaintiff without issuing any warnings, causing Plaintiff to fall onto the concrete. *See id.* at ¶ 18. "Although Plaintiff did not engage in any wrongdoing and did not harm or threaten to harm [Defendant] Rivera or anyone else, [Defendant] Rivera then continued to tase [Plaintiff] several times, both with the [t]aser's prongs and in 'drive stun' mode." *Id.* at ¶ 18. Throughout the "barrage" of tasing, while Plaintiff was "on his back in a submissive position with his hands in the air," he "pleaded with [Defendant] Rivera to stop tasing him." *Id.* at ¶ 20.

Even after Defendants Reynolds and Fein handcuffed Plaintiff's hands behind his back, and while Plaintiff lay face down on the ground, Defendant Rivera used his taser twice in drive stun mode on Plaintiff's "upper back and neck area for several seconds each time." *Id.* at ¶ 21. Defendants Reynolds and Fein had an opportunity to intervene and stop Defendant Rivera from continuing to tase Plaintiff, who was "physically detained and posed no threat to anyone," but failed to do so. *Id.* at ¶ 22. In total, Defendant Rivera used his taser on Plaintiff "more than [fifteen] times, causing Plaintiff to suffer multiple injuries and extreme pain and suffering." *Id.* at ¶ 19. Defendant Fein called an ambulance, and Plaintiff was transported to Kingston Hospital, where he was treated for his injuries. *See id.* at ¶¶ 23-24.

Plaintiff was issued two appearance tickets by Defendant Rivera; the first was for Obstruction of Governmental Administration ("OGA"), and the second was for possession of a controlled substance (two pills of MDMA). *See id.* at ¶¶ 24-25. Plaintiff was arraigned on

September 6, 2022, but denies that he committed either crime and alleges that he "had never possessed MDMA." *Id.* at ¶¶ 25-26.  Kingston City Court Judge Philip W. Kirschner dismissed the OGA charge on March 27, 2023, "based on facial insufficiency of the charging instrument." *Id.* at ¶ 27.  Judge Kirschner found that "[Defendant] Rivera failed to 'include any facts establishing that the officer's arrest of Defendant was legally authorized' and had alleged 'no facts that the officer possessed a reasonable suspicion that Defendant was involved in a felony or misdemeanor, authorizing the officer to forcibly stop and detain Defendant.'" *Id.*  The charge of criminal possession of a controlled substance was adjourned in contemplation of dismissal ("ACD") and, thereafter, was dismissed and sealed on October 25, 2023.  *See id.* at ¶ 28.

Plaintiff continues to receive medical treatment for the physical, mental, emotional, and physical injuries he suffered.  *See id.* at ¶ 29.

Through the amended complaint, Plaintiff brings seven causes of action: (1) false arrest and false imprisonment in violation of the New York State law and the Fourth Amendment, pursuant to 42 U.S.C. § 1983 ("§ 1983"), against all Defendants; (2) malicious prosecution in violation of the New York State law and the Fourth Amendment, pursuant to § 1983, against Defendants Rivera and the County; (3) excessive force in violation of the Fourth Amendment, pursuant to § 1983, against Defendants Rivera and the County; (4) battery under New York State law, against Defendants Rivera and the County; (5) failure to intervene in violation of the Fourth Amendment, pursuant to § 1983, against Defendants Reynolds, Fein, and the County; (6) fabrication of evidence in violation of the fifth and fourteenth amendments, pursuant to § 1983, against Defendants Rivera and the County; and (7) unlawful detention and seizure in violation of New York State law and the Fourth Amendment, pursuant to § 1983, against Defendants Rivera

and the County. *See* Dkt. No. 20 at ¶¶ 31-56. Defendants move to dismiss all of Plaintiffs'

claims, except for the third cause of action for excessive force. *See* Dkt. No. 25-4 at 1 n.1.

**III. DISCUSSION**

**A.    Legal Standard**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v.*

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal

sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all

reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not

extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

above the speculative level," *see id.* at 555 (citation omitted), and present claims that are

"plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement of relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately,

"when the allegations in a complaint, however true, could not raise a claim of entitlement to

5

relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across

the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

**B.    Constitutional Claims[2]**

   *1. Unlawful Seizure*

   Defendants argue that Plaintiff's claim for unlawful detention and seizure must be

dismissed because Defendant Rivera lawfully detained Plaintiff by means of a *Terry* stop, as he

had reasonable suspicion that criminal activity was afoot, based upon Plaintiff's "furtive and

fidgety movements and subsequent flight from the scene" of the traffic stop.  Dkt. No. 25-4 at 15-

17.  Plaintiff contends that Defendant Rivera lacked a particularized and objective basis to detain

Plaintiff because Plaintiff was a passenger in the vehicle and remained calm throughout the stop.

*See* Dkt. No. 26 at 10-14.  Further, Plaintiff argues that the amended complaint plausibly alleges

that he was free to walk away from the vehicle and that such conduct did not trigger reasonable

suspicion because Plaintiff was not in a high-crime area, did not appear to be shielding a weapon

or other contraband, and was not engaging in any criminal activity.  *See id.* at 11-13.

   An individual is seized for purposes of the Fourth Amendment "when the officer, by

means of physical force or show of authority, terminates or restrains his freedom of movement."

*Brendlin v. California*, 551 U.S. 249, 254 (2007) (quotation and internal quotation marks

---

[2]  At this time, Defendants do not argue that they are entitled to qualified immunity.  *See,
generally*, Dkt. Nos. 25, 27.  Additionally, Defendants argue in their reply brief that the amended
complaint fails to establish the County's liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436
U.S. 658 (1978), *see* Dkt. No. 27 at 8, but Defendants did not raise this argument in their initial
motion papers, *see Alford v. City of N.Y.*, 413 F. Supp. 3d 99, 108 (E.D.N.Y. 2018) ("It is well-
established that '[a]rguments may not be made for the first time in a reply brief'") (quotation
omitted).  Regardless, Defendants' belated argument is irrelevant as the face of the amended
complaint is clear that Plaintiff does not assert *Monell* liability and brings only state claims
against the County based on a theory of respondeat superior liability.  *See* Dkt. No. 20 at ¶¶ 34,
38.  The issue of the County's respondeat superior liability for Plaintiff's state law claims is
addressed below.

omitted).  A police officer may stop and briefly detain a person (a "*Terry* stop") if the officer has "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  The Supreme Court has defined reasonable suspicion as "something more than an inchoate and unparticularized suspicion or hunch," but less than probable cause.  *Id.* (quotation and internal quotation marks omitted).

According to the amended complaint, Defendant Rivera initiated a traffic stop of a vehicle for an alleged traffic infraction; Plaintiff was a passenger inside the vehicle.  *See* Dkt. No. 20 at ¶ 9.[3]  Defendant Rivera requested Plaintiff's identification and Plaintiff complied, despite the fact that he was not the driver.  *See id.* at ¶ 10.  The driver exited the vehicle upon Defendant Rivera's demands and Defendant Rivera "proceeded to harass both the driver and Plaintiff . . . , claiming that [Plaintiff] was acting 'fidgety,' when Plaintiff had remained calm throughout the stop."  *Id.* at ¶ 13.  At this time, Plaintiff, on his own accord, exited the vehicle; Defendant Rivera had not told Plaintiff that he was being detained and had not directed Plaintiff to remain in the vehicle.  *See id.* at ¶¶ 14-15.  Defendant Rivera then chased Plaintiff, leading to his subsequent arrest and the alleged use of excessive force.  *See id.* at ¶¶ 17-22.

Although Defendants argue that Defendant Rivera had reasonable suspicion to detain Plaintiff because Plaintiff was acting "fidgety," Plaintiff has alleged that he "remained calm throughout the stop and noted that he had not done anything to justify Rivera's aggressive questioning of him."  Dkt. No. 20 at ¶ 13.  Furthermore, the amended complaint states that "Kingston City Court Judge Philip W. Kirschner dismissed the OGA charge against Plaintiff

---

[3] There is no dispute, at this time, that Plaintiff was seized, for Fourth Amendment purposes, from the moment the traffic stop was commenced.  *See Brendlin*, 551 U.S. at 251 (holding that a passenger of an automobile is seized when a police officer makes a traffic stop).

based on facial insufficiency of the charging instrument, finding that Rivera . . . had alleged 'no facts that the officer possessed a reasonable suspicion that [Plaintiff] was involved in a felony or misdemeanor, authorizing the officer to forcibly stop and detain [him]." *Id.* at ¶ 27. At the motion to dismiss stage the Court must credit Plaintiff's version of events. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof'") (quotation omitted).

Additionally, Defendants' reliance on *Maryland v. Wilson,* 519 U.S. 408 (1997) is misplaced. *See* Dkt. No. 25-4 at 17. In *Wilson*, the Supreme Court held that an officer conducting a traffic stop may order passengers to exit a vehicle. *See Wilson*, 519 U.S. at 415. However, the Court expressly refused to hold, on the facts presented, that "an officer may forcibly detain a passenger for the entire duration of the stop," and, instead found that the passenger was not subjected to detention when he left the vehicle, and his arrest was based on independent probable cause for his possession of cocaine with intent to distribute. *See id.* at 415 n.3. Therefore, *Wilson* does not support an argument here that Plaintiff was lawfully detained merely because he exited the vehicle—Defendant Rivera needed an objectively reasonable basis to detain Plaintiff and prevent him from walking away from the traffic stop. *See Stratton v. Russell*, No. 1:13-CV-520, 2017 WL 1184191, *4 (N.D.N.Y. Mar. 29, 2017) ("Although asking Plaintiff to exit the vehicle was likely permissible by virtue of the traffic stop . . . ; once Plaintiff was outside the vehicle, Defendant proceeded to conduct a totally independent investigation into Plaintiff's name. Therefore, because Defendant detained the passenger for further questioning unrelated to the initial stop, he must have had an objectively reasonable articulable suspicion that illegal

activity has occurred or is occurring") (quotation, citation, internal quotation marks, and alterations omitted).

Plaintiff has plausibly alleged that Defendant Rivera seized/detained him without reasonable suspicion when he subjected Plaintiff to further questioning unrelated to the initial traffic stop, as well as when he chased and physically detained Plaintiff. *See* Dkt. No. 13 at ¶¶ 13-17, 27, 51-56. Accordingly, taking Plaintiff's allegations as true, as the Court must, dismissal of the unlawful seizure claim is denied.

### 2. *False Arrest and False Imprisonment*

Defendants argue that Plaintiff's claim for false arrest and false imprisonment must be dismissed because Defendant Rivera had probable cause to arrest Plaintiff. *See* Dkt. No. 25-4 at 12-13, 15-17. Plaintiff contends that the amended complaint plausibly alleges that Defendants lacked probable cause to support Plaintiff's arrest because, among other things, Plaintiff did not commit OGA. Dkt. No. 26 at 10-14. Defendants respond that Plaintiff's actions during the traffic stop gave rise to Defendant Rivera's reasonable suspicion to question Plaintiff and that Plaintiff's actions thereafter provided probable cause for his arrest. *See* Dkt. No. 27 at 5-6.

"False arrest and false imprisonment . . . are two names for the same tort." *Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 844-45 (2d Dep't 2011) (citation omitted); *see Jenkins v. City of N.Y.*, 478 F.3d 76, 88 n.10 (2d Cir. 2007) ("'False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest'") (quotation omitted). A "§ 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (citation omitted).

"'In analyzing § 1983 claims for unconstitutional false arrest, [courts] have generally looked to the law of the state in which the arrest occurred.'" *Id.* at 151-52 (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quotation omitted). The parties do not appear to dispute whether the first three elements of false arrest occurred and, therefore, only the issue is whether the confinement was "otherwise privileged."

When an encounter between the police and a citizen rises to the level of an arrest—an encounter more intrusive than an investigative detention—"the government must establish that the arrest is supported by probable cause." *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991) (quotation and internal quotation marks omitted). "Probable cause 'is a complete defense to an action for false arrest' brought under New York law or § 1983." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012), *as amended* (Dec. 4, 2012) (quotation omitted). "'[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Jenkins*, 478 F.3d at 84-85 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer *at the time of the arrest* objectively provided probable cause to arrest." *Jaegly*, 439 F.3d at 153 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)) (emphasis added).

10

As the Second Circuit has held, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Id.* "Stated differently, when faced with a claim for false arrest, [courts] focus on the validity of the *arrest,* and not on the validity of each charge." *Id.* (emphasis in original). Finally, "[w]hen an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (citation omitted).

In this case, the validity of Defendants' arrest does not, as Plaintiff argues, turn on whether probable cause existed with respect to the OGA or possession of a controlled substance charges specifically, *see* Dkt. No. 26 at 12; the relevant inquiry is simply whether probable cause existed to arrest Plaintiff for any reason, s*ee Jaegly*, 439 F.3d at 154. Nevertheless, Plaintiff has clearly sufficiently alleged that Defendants lacked probable cause to arrest him. *See* Dkt. No. 20 at ¶¶ 16-35. Therefore, taking Plaintiff's allegation as true, as the Court must at this juncture, dismissal of the false arrest and false imprisonment claim is denied.[4]

### 3. Malicious Prosecution

Plaintiff's malicious prosecution claim is brought only against Defendant Rivera and the County. *See* Dkt. No. 20 at ¶¶ 36-39. Defendants argue that the malicious prosecution claim fails to state a claim because Defendant Rivera had probable cause to arrest and charge Plaintiff with OGA and possession of a controlled substance. *See* Dkt. No. 25 at 13-15. Plaintiff contends that because the amended complaint plausibly alleges that Defendant Rivera lacked probable cause to

---

[4]  The Court notes that the fact that Plaintiff eventually received an ACD for the possession of a controlled substance charge does not bar his false arrest claim, as "[a]n ACD is not the same as a conviction." *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 436 (W.D.N.Y. 2018) (citation omitted).

arrest Plaintiff or to initiate his criminal prosecution, the claim must survive.  *See* Dkt. No. 26 at 14-15.

A malicious prosecution action implicates the Fourth Amendment constitutional right "to be free of unreasonable seizure of the person—*i.e.,* the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 116 (2d Cir. 1995).  "To state a claim for malicious prosecution, a plaintiff must allege (i) the initiation or continuation of a criminal proceeding against the plaintiff, (ii) termination of the proceeding in the plaintiff's favor, (iii) a lack of probable cause for commencing the proceeding, and (iv) actual malice as a motivation for the defendant's actions." *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301-02 (N.D.N.Y. 2018) (citing *Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 604 (E.D.N.Y. 2017)).  However, "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

"Because lack of probable cause is an element of a malicious prosecution claim, 'the existence of probable cause is a complete defense to a claim of malicious prosecution.'" *Stansbury v. Wertman*, 721 F.3d 84, 94-95 (2d Cir. 2013) (quoting *Manganiello v. City of N.Y.*, 612 F.3d 149, 161-62 (2d Cir. 2010)).  "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases . . . .  'Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty.'" *Id.* (quoting *Boyd v. City of N.Y.*, 336 F.3d 72, 74, 76 (2d Cir. 2003)).

"Despite the distinction between probable cause to arrest and probable cause to prosecute, where 'probable cause to arrest exist[s] . . . [and there are no] intervening facts between arrest and initiation of prosecution to undermine that probable cause, claims of malicious prosecution cannot survive.'" *Caraballo v. City of N.Y.*, 726 F. Supp. 3d 140, 160 (E.D.N.Y. 2024) (quoting *Powell v. Murphy*, 593 Fed. Appx. 25, 28 (2d Cir. 2014)). "In addition to intervening facts or newly discovered evidence, an officer's 'failure to make further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" *Id.* (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)). "For example, an officer's failure to examine evidence already available to him may lead probable cause that existed at arrest to dissipate prior to the commencement of the prosecution." *Id.* (citing *Weiner*, 90 F. Supp. 3d at 34).

"'[A] lack of probable cause generally creates an inference of malice.'" *Manganiello*, 612 F.3d at 163 (quotation omitted). "'[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff.'" *Id.* (quoting *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)); *see Lowth*, 82 F.3d at 573 ("Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served'") (quotation omitted).

Here, Plaintiff alleges that Defendant Rivera initiated Plaintiff's criminal prosecution without probable cause. *See* Dkt. No. 20 at ¶ 37. Specifically, the complaint states that Defendant Rivera arrested Plaintiff and charged him with OGA, "without any legal basis and based on a false narrative," and that Defendant Rivera "later add[ed] a concocted charge of criminal possession of a controlled substance." *Id.* Accepting Plaintiff's allegations as true and

drawing all reasonable inferences in his favor, Plaintiff has stated a claim for malicious prosecution against Defendant Rivera and the motion to dismiss is denied in that regard.

### 4. Failure to Intervene

Plaintiff claims that Defendants Reynolds and Fein failed to intervene to prevent Defendant Rivera "from continuing to tase Plaintiff even after he was physically detained and did not pose any threat of harm," in violation of Plaintiff's Fourth Amendment rights. Dkt. No. 20 at ¶ 47. Defendants argue that the failure to intervene claim must be dismissed because Defendants Reynolds and Fein had no realistic opportunity to intervene to prevent the alleged excessive force. *See* Dkt. No. 25-4 at 18-20. Plaintiff contends that, because he alleges Defendants Reynolds and Fein actively assisted in Defendant Rivera's use of excessive force (by holding Plaintiff's cuffed hands behind his back while Defendant Rivera tased him), the amended complaint adequately alleges that Defendants Reynolds and Fein deliberately chose not to intervene and are liable for failure to intervene. *See* Dkt. No. 26 at 15-16. As noted, Defendants do not seek dismissal of the excessive force claim itself, which is brought only against Defendants Rivera and the County.

"A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Id.* (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)). "An officer who fails to intercede in the use of excessive force . . . is liable for the preventable harm caused by the actions of other officers." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly

14

conclude otherwise.'" *Id.* at 244 (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). An underlying constitutional violation is a precondition of a failure-to-intervene claim. *See O'Neill*, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers").

Defendants rely on *O'Neill* to support their argument that Defendants Reynolds and Fein had no opportunity to intervene because there the Second Circuit found that an officer, under the facts present before the court, had no realistic opportunity to attempt to prevent three blows struck in "rapid succession." Dkt. No. 25-4 (citing *O'Neill*, 839 F.2d at 11). However, not only are the allegations here markedly different than the facts presented in *O'Neill*, the Second Circuit's decision goes on to find that, having been "alerted to the need to protect O'Neill from further abuse," there was a triable issue of fact as to whether the officer failed to intervene in subsequent excessive force that occurred after the three blows struck in rapid succession. *See O'Neill*, 839 F.2d at 11. Moreover, the present matter is before the Court on a motion to dismiss, whereas *O'Neill* was appealed following a jury verdict. *See id.* at 10.

In the amended complaint, Plaintiff alleges that he "pleaded with [Defendant] Rivera to stop tasing him" and, after his pleas went unanswered, Defendants Reynolds and Fein handcuffed Plaintiff's hands behind his back while Defendant Rivera continuously deployed his taser on Plaintiff's back. *See* Dkt. No. 20 at ¶¶ 20-22. The "malicious[] and indiscrimate[]" tasing by Defendant Rivera allegedly caused Plaintiff "agonizing pain and bleeding," while Defendants Reynolds and Fein "had an opportunity to intervene and stop [Defendant] Rivera from continuing" the barrage. *Id.* Taking these allegations as true, Plaintiff has stated a claim for failure to intervene and the motion to dismiss is denied.

### 5. Fabrication of Evidence

Defendants argue that Plaintiff has failed to sufficiently state a fabrication of evidence claim. *See* Dkt. No. 25-4 at 20-21. Plaintiff opposes this argument. *See* Dkt. No. 26 at 16-18.

"'When a government official manufactures false evidence against an accused, and the use of that fabricated evidence results in the deprivation of the accused's liberty, the government official infringes the accused's constitutional right to a fair trial in a manner that is redressable in § 1983 action for damages.'" *Struthers v. City of N.Y.*, No. 12-CV-242, 2013 WL 2390721, *13 (E.D.N.Y. May 31, 2013) (quoting *Morse v. Spitzer*, No. 07–cv–4793, 2012 WL 3202963, *3 (E.D.N.Y. Aug.3, 2012)). "To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffe[red] a deprivation of life, liberty, or property as a result." *Barnes v. City of N.Y.*, 68 F.4th 123, 128-29 (2d Cir. 2023) (quoting *Ashley v. City of N.Y.*, 992 F.3d 128, 139 (2d Cir. 2021) (internal quotation marks omitted) (alterations in original). "A § 1983 plaintiff 'may sue for denial of the right to a fair trial based on a police officer's fabrication of information . . . when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor.'" *Id.* at 129 (quotation omitted).

The only bases upon which Defendants seek dismissal of the fabrication of evidence claim is that the amended complaint "fails to allege what information was fabricated, or that it was likely to influence a jury's verdict." Dkt. No. 25-4 at 21.

To the contrary, Plaintiff has alleged exactly what information he claims was fabricated in the charging instruments that led to his criminal prosecution. The amended complaint alleges that Defendant Rivera filed "retaliatory and trumped up charges," including false allegations that

16

Plaintiff possessed MDMA pills.  Dkt. No. 20 at ¶¶ 25-26.  Plaintiff also alleges that Defendant Rivera "knowingly fabricat[ed] and forward[ed]" false statements to prosecutors and, specifically, that Defendant Rivera "falsely averred in the criminal complaints against Plaintiff that he had 'physically disobeyed' Rivera's orders and physically resisted arrest, and that he had possessed two MDMA pills which Plaintiff had never possessed." *Id.* at ¶¶ 49-50.  The OGA charge was dismissed because the charging instrument was facially insufficient, and the criminal possession of a controlled substance charge was adjourned in contemplation of dismissal and later dismissed entirely.  *See id.* at ¶¶ 27-28.

As for whether the information was "'likely to influence a jury's decision' . . . , [t]his element 'is properly understood to require a showing of the materiality of the false information presented—that the information would likely influence the jury if it arrived at a jury.'"  *Snead v. City of N.Y.*, 463 F. Supp. 3d 386, 393 (S.D.N.Y. 2020) (quoting *Jordan v. City of N.Y.*, 2017 WL 3106453, *3 (S.D.N.Y. July 17, 2017)).  This element "does not turn on whether the fabricated evidence is in fact *used* during a trial; it focuses rather on whether the fabricated evidence, if introduced during trial, could be expected to influence the jury's decision-making process." *Ekukpe v. Santiago*, 823 Fed. Appx. 25, 31 (2d Cir. 2020).  False statements in arrest paperwork and criminal court complaints may not be directly admissible at trial, but "false information contained in those documents surely would [be] admissible and material [if it is] elicited as testimony from the officers who wrote and/or approved the reports."  *Id.*; *see Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process'") (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)).

A person may be found guilty of the OGA charge that Plaintiff was charged with if the prosecution proves that the person "intentionally obstruct[ed], impair[ed] or pervert[ed] the administration of law or other governmental function or prevent[ed] or attempt[ed] to prevent a public servant from performing an official function, by means of intimidation, physical force or interference." N.Y. Penal Law § 195.05. And, as for the other charge brought against Plaintiff, the prosecution would have had to prove that he "knowingly and unlawfully possessed a controlled substance." N.Y. Penal Law § 220.03. Plaintiff alleges that Defendant Rivera made false statements, which were provided to prosecutors, including that Plaintiff "physically disobeyed" Defendant Rivera's orders and that Plaintiff possessed MDMA. *See* Dkt. No. 20 at ¶ 49. Drawing all reasonable inferences in Plaintiff's favor, Defendant Rivera's alleged false statements could undoubtably influence a jury's decision-making process because such statements, if introduced through testimony or another admissible form, could be used to satisfy the elements of the criminal charges brought against Plaintiff. *See Chan v. City of N.Y.*, No. 19-CV-7239, 2024 WL 1452381, *7 (E.D.N.Y. Feb. 15, 2024) (finding this element satisfied where allegedly fabricated statements served as the basis for the criminal complaint signed by the officer and filed by prosecutors).

Plaintiff has made more than "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements." *Ashcroft*, 556 U.S. at 681 (quotation and internal quotation marks omitted). At this stage, these allegations are sufficient to satisfy the elements of a fabricated evidence claim. *See Ashley*, 992 F.3d at 139. The motion to dismiss this claim is, therefore, denied.

## C.    State Law Claims

### *1. Statute of Limitations*

Defendants argue that Plaintiff's state law claims for false arrest/imprisonment, malicious prosecution, battery, and unlawful detention and seizure, against the Individual Defendants, "must be dismissed as time-barred by the one[-]year statute of limitations applicable to tort claims against a sheriff." Dkt. No. 25-4 at 10-11 (citing N.Y. C.P.L.R. § 215(1), (3)). Plaintiff contends that, because he was required to "serve a Notice of Claim pursuant to County Law § 52 and General Municipal Law § 50-e, and because the County must indemnify [the Individual Defendants] pursuant to Public Officers [Law §] 18(1)(a) and (4)(a), the statute of limitations for Plaintiff[']s state-law claims is one year and ninety days." Dkt. No. 26 at 8 (citing *Kennedy v. City of Albany*, No. 1:15-cv-00491, 2015 WL 6394513, *2-5 (N.D.N.Y Oct. 22, 2015)) (other citations omitted). In response, Defendants "respectfully urge this court to reconsider its prior determination [in *Kennedy*, 2015 WL 6394513, at *2-5,] as this application and interpretation of the statute renders [C.P.L.R.] § 215 meaningless." Dkt. No. 27.

Although a "motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations," *Ortiz v. City of N.Y.*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) (citation omitted), "where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss," *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

The one-year and ninety-day limitations period contained in General Municipal Law § 50-i "takes precedence over the one-year period of limitations provided for in CPLR 215," for causes of action to recover damages for intentional torts allegedly committed by municipal defendants. *Bosone v. Cnty. of Suffolk*, 274 A.D.2d 532, 533 (2d Dep't 2000) (quotation and internal quotation marks omitted). As this Court observed, *see Kennedy*, 2015 WL 6394513, at *2, the Second Circuit has held that the General Municipal Law's limitations period controls claims brought

against a municipality itself and extends to claims against municipal employees "if the municipality is required to indemnify the defendant pursuant to the General Municipal Law or any other statutory provision and is therefore 'the real party in interest,'" *Conte v. Cnty. of Nassau*, 596 Fed. Appx. 1, 5 (2d Cir. 2014) (quoting *Ruggiero v. Phillips*, 292 A.D.2d 41, 44 (2d Dep't 2002)). General Municipal Law § 50–j provides that a municipality is "liable for . . . any duly appointed police officer of such municipality, authority or agency for any negligent act or tort, provided such police officer, at the time of the negligent act or tort complained of, was acting in the in performance of his duties and within the scope of his employment." *See LaGrange v. Ryan,* 142 F.Supp.2d 287, 295 (N.D.N.Y. 2001) (stating that notice of claim requirements are not limited to just negligence claims but must also be served for "intentional tort actions against police officers").

As for Defendants' request that the Court reconsider its holding in *Kennedy*, 2015 WL 6394513, at *2-5, the Court declines. New York State courts, as well as federal courts applying New York law, recognize that the one-year-and-ninety-day statute of limitations applies in cases such as *Kennedy* and the present matter. *See, e.g.*, *Conte*, 596 Fed. Appx. at 5 ("Where a plaintiff sues 'a city, county, town, village, fire district or school district,' . . . a one-year-and-ninety-day statute of limitations governs") (quoting Gen. Mun. Law § 50–i); *Ruggiero*, 292 A.D.2d at 44-45 (applying the limitations period of the General Municipal Law, instead of C.P.L.R. § 215, to tort claim against municipal defendant); *Wright v. City of Newburgh*, 259 A.D.2d 485, 486 (2d Dep't 1999) (collecting cases); *see also*, *Kavanaugh v. Vill. of Green Island*, No. 8:14-CV-01244, 2016 WL 7495813, *3 (N.D.N.Y. Dec. 30, 2016) (dismissing state law intentional tort claims against a New York State Trooper as time-barred by C.P.L.R. § 215, but finding similar tort claims brought against officers employed by a municipal corporation—the City of Albany—subject to General

20

Municipal Law § 50-i and, therefore, timely).  Defendants' citation to a single 1990 decision from the Eastern District of New York does not compel the Court to ignore decades of precedent that supports its holding in *Kennedy*.  *See* Dkt. No. 27 at 5 (citing *Reid v. City of N.Y.*, 736 F. Supp. 21 (E.D.N.Y. 1990)).

Here, Plaintiff alleges that the Individual Defendants were police officers employed by the County, acting in the performance of their duties and within the scope of their employment.  *See* Dkt. No. 20 at ¶¶ 3-5.  Indeed, Defendants admit that the amended complaint alleges that the Individual Defendants were acting in the course of their duties.  *See* Dkt. No. 25-4 at 11.  The alleged tortious conduct occurred on August 30, 2022, *see* Dkt. No. 1 at ¶ 9, and this action was commenced on November 28, 2023, *see* Dkt. No. 2.[5]  The Court finds that the time limitations of General Municipal Law § 50–i apply to Plaintiff's claims as alleged and, therefore, the original complaint was timely filed, within one year and ninety days of the alleged tortious acts.[6]

### 2. Respondeat Superior Liability

Defendants contend that the state law claims against the County must be dismissed because, under applicable New York law, counties in New York State are not liable for the torts

---

[5]  Even if the C.P.L.R. § 215 one-year limitations period applied, Plaintiff's claim for malicious prosecution would be timely because that claim did not accrue until the criminal charges against him were dismissed in March and April of 2023.  *See* Dkt. No. 26 at 4 (citing *Guzman v. City of N.Y.*, 236 A.D.2d 444 (2d Dep't 1997)).

[6]  If Plaintiff fails to prove that the Individual Defendants were acting in the performance of their duties and within the scope of their employment at the time of the alleged tortious conduct, then the General Municipal Law does not apply and the C.P.L.R. § 215(3) one-year statute of limitations is applicable.  *See Clark v. City of Ithaca*, 235 A.D.2d 746, 821 (3rd Dep't 1997) (stating that "[o]nly where a finding is made that the police officer's acts were clearly not within the scope of employment is the one-year Statute of Limitations of CPLR 215(3) applicable"); *Rattner v. Planning Comm'n of Pleasantville*, 156 A.D.2d 521, 526 (2d Dep't 1989) (stating that the party asserting the claims of tortious conduct bears the burden of pleading and proving compliance with the notice of claim requirements).

committed by the county sheriff or his deputies absent a local law assuming such liability. *See* Dkt. No. 25-4 at 22. Plaintiff opposes this argument, contending that the County can be held liable for the Individual Defendants' actions pursuant to respondeat superior. *See* Dkt. No. 26 at 18-19.[7]

"It is well-settled that, as required by Article XIII, § 13(a) of the N.Y. Constitution, a county is not liable for the negligence of a sheriff, or his or her deputies, in the absence of a local law adopted by the county." *Flannery v. Cnty. of Niagara*, No. 23-CV-864, 2025 WL 659389, *32 (W.D.N.Y. Jan. 31, 2025) (collecting cases). "In 1989, article XIII, § 13(a), was amended to delete the sentence 'But the county shall never be made responsible for the acts of the sheriff.'" *DiJoseph v. Erie Cnty.*, No. 18-CV-919, 2020 WL 4194136, *8 (W.D.N.Y. July 21, 2020). Thereafter, "the Fourth Department . . . held that this 1989 amendment 'merely allows a county to accept responsibility for the negligent acts of the Sheriff; it does not impose liability upon the county for the acts of the Sheriff or his deputies on a theory of respondeat superior.'" *Id.* (quoting *Marashian v. City of Utica*, 214 A.D.2d 1034, 1034 (4th Dep't 1995)).

In *Flannery*, the district court dismissed negligence claims brought against Niagara County, based on the alleged negligence of the sheriff and his deputies, because the county "has not adopted a local law accepting such responsibility." *Flannery*, 2025 WL 659389, at *32 (citing *Cain v. Cnty. of Niagara*, 2022 WL 616795, *17 (W.D.N.Y. Mar. 2, 2022)). The court noted that the plaintiff did not allege or argue that such local law existed. *See id.*

---

[7] Defendants also argue that Plaintiff cannot bring a stand-alone respondeat superior claim. *See* Dkt. No. 25 at 22. Defendants are correct that New York does not recognize respondeat superior as an independent cause of action, *see Biswas v. City of N.Y.*, 973 F. Supp. 2d 504, 540 (S.D.N.Y. 2013) ("Under New York law, respondeat superior 'does not stand alone as a substantive cause of action'") (quoting *Donelli v. Cnty. of Sullivan*, No. 07 Civ. 2157, 2009 WL 2365551, *12 n.10 (S.D.N.Y. July 31, 2009)). However, Plaintiff has brought no cause of action for respondeat superior, so the argument is moot. *See generally*, Dkt. No. 20.

In the wake the Fourth Department's decision in *Marashian*, New York courts and federal courts applying New York law have found that certain counties could not be held liable for the acts of sheriff's deputies because those counties had not enacted a local law accepting such liability. *See, e.g.*, *Wilson v. Cnty. of Cattaraugus*, No. 23-CV-429S, 2024 WL 4026203, *4 (W.D.N.Y. Sept. 3, 2024) ("Plaintiff has not alleged that the County of Cattaraugus has enacted a local law assuming respondeat superior liability for the acts of the Sheriff's Office nor does she identify any such law in her briefing"); *Pusateri v. City of Dunkirk*, No. 1:20-CV-00427, 2021 WL 3160768, *14 (W.D.N.Y. July 27, 2021) (dismissing claims brought against Chautauqua County on a theory of respondeat superior liability); *Mustafa v. Povero*, No. 15-CV-6714, 2017 WL 4169339, *6 (W.D.N.Y. Sept. 20, 2017) ("[T]he Complaint does not allege that Ontario County has passed a local law assuming respondeat superior liability for the acts of the Sheriff or his deputies"); *De Ratafia v. Cnty. of Columbia*, No. 1:13-CV-174, 2013 WL 5423871, *10 (N.D.N.Y. Sept. 26, 2013) (holding that the plaintiff did not "suggest any such local law exists" in Columbia County); *Jones v. Seneca Cnty.*, 154 A.D.3d 1349, 1350 (4th Dep't 2017) (finding defendant Seneca County "established that it did not assume such responsibility by local law"); *Villar v. Cnty. of Erie*, 126 A.D.3d 1295, 1297 (4th Dep't 2015) (finding no such local law in Erie County).

Here, however, Plaintiff argues that Ulster County has adopted a local law accepting liability for the acts of county employees of the sheriff's department, when such acts were undertaken in the course of their duties. *See* Dkt. No. 26 at 19 ("'Any act or omission of any employee of the County in the Sheriff's Department done or made in the performance of an official duty shall be the act or omission of the County, and the County shall be liable for any damages which may arise as the result of such employee's negligence in carrying out such official

duty'") (quoting Ulster County Code § 117-4). Defendants do not offer an argument in opposition to the applicability of Ulster County Code § 117-4. *See* Dkt. No. 27 at 8.

The Court has identified no precedent interpreting whether Ulster County has adopted a local law assuming respondeat superior liability for the acts of its sheriff's deputies, however, at least one decision in this district has permitted state law claims to proceed against Ulster County on this theory. *See Jackson v. Cnty. of Ulster*, No. 1:22-CV-148, 2022 WL 2954370, *10 (N.D.N.Y. July 26, 2022). Moreover, the Court reads *Marashian* to hold that a county disclaiming respondeat superior liability bears the burden of showing that it has no local law assuming such liability. *See Marashian*, 214 A.D.2d at 1034 ("Oneida County failed to provide evidence that it had no local law whereby it assumed liability for the acts of the Sheriff and his deputies . . . . Consequently, its motion for summary judgment was properly denied"). Thus, because Defendants have failed to overcome Plaintiff's proffer of a local law which purports to show that Ulster County has assumed respondeat superior liability for the acts of its sheriff's deputies, the motion to dismiss on this basis is denied.

### 3. Battery

Defendants argue that Plaintiff's battery claim must be dismissed as untimely under C.P.L.R. § 215(3) and because the County cannot be held liable for Defendant Rivera's actions under a theory of respondeat superior. *See* Dkt. No. 25-4 at 12. As Defendants limit their motion to these arguments, which the Court has rejected for the reasons stated herein, the motion to dismiss the battery claim is denied.

### IV. CONCLUSION

After careful review of the pleadings, the parties' submission, and the applicable law, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 25) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 25, 2025
      Albany, New York

Mae A. D'Agostino
U.S. District Judge